```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH VINAGRAY,

                Plaintiff,
                                              Memorandum and Order
        v.
                                              20-CV-715(KAM)(RML)
EXPERIAN INFORMATION SOLUTIONS,
INC., and AMERICAN EXPRESS
NATIONAL BANK,

                Defendants.
----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

This lawsuit, brought against American Express National Bank ("American Express")[1] and the three major consumer reporting agencies, alleges that American Express provided the consumer reporting agencies with inaccurate information about debt charged to the plaintiff's credit card account, and that American Express failed to investigate after the plaintiff disputed the debt. American Express has moved to compel arbitration based on an arbitration clause contained the cardmember agreement that governed the plaintiff's credit card account. For the reasons that follow, American Express's motion to compel arbitration is GRANTED.

---

[1] The entity named in the complaint was American Express Company, but American Express has advised that the correct entity is American Express National Bank.

1

**Background**

The plaintiff in this action, Joseph Vinagray ("Plaintiff"), initiated the case by filing a complaint on February 10, 2020. (*See generally* ECF No. 1, Complaint ("Compl.").) Plaintiff, who is a resident of Queens, New York, named American Express as a defendant, along with the three major consumer reporting agencies: Equifax Information Services, LLC; Experian Information Solutions, Inc. ("Experian"); and TransUnion, LLC. (*Id.* ¶¶ 4-15.) Two of the defendants have been dismissed (one voluntarily by Plaintiff and one by stipulation), leaving only American Express and Experian as defendants. (*See* ECF No. 28, Notice of Voluntary Dismissal as to Equifax Information Services, LLC; ECF No. 43, Stipulation of Dismissal Between Plaintiff and TransUnion, LLC.)

The remaining consumer reporting agency named in the complaint, Experian, is engaged in the business of compiling and disbursing information about individual consumers, including their credit histories. (*See* Compl. ¶¶ 6-14.) Plaintiff alleges that Experian issued credit reports that inaccurately reported that Plaintiff had a past due balance in connection with his American Express credit card. (*Id.* ¶¶ 17-18.) Plaintiff notified Experian and the other consumer reporting agencies about the allegedly inaccurate information on October 29, 2019. (*Id.* ¶ 21.) Plaintiff alleges that the agencies

notified American Express of Plaintiff's dispute, and thereafter American Express "failed to conduct a reasonable investigation and continued to report false and inaccurate, adverse information on the consumer credit report of the Plaintiff . . ., continuing to report a conflicted past due and overall balance." (*Id.* ¶¶ 22-23.) Plaintiff asserts willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") by American Express and the other remaining defendant. (*Id.* ¶¶ 30-46, 72-94.)

Specifically, with regard to American Express, Plaintiff alleges that American Express continued listing the disputed debt, and violated provisions of the FCRA that require a financial institution to investigate Plaintiff's dispute and report its findings to the consumer reporting agencies. (*Id.* ¶¶ 83-94); *see* 15 U.S.C. § 1681s2(b)(1)(A)-(C) ("After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall conduct an investigation with respect to the disputed information" and "report the results of the investigation to the consumer reporting agency[.]").

The relevant account relates to a credit card Plaintiff applied for and was approved for in May 2012. (ECF No. 34, Declaration of Raquel Hernandez ("Hernandez Decl."), ¶ 3.) In connection with the opening of this credit card account,

3

American Express mailed Plaintiff a cardmember agreement. (*Id.*; *see id.*, Ex. A, Cardmember Agreement (the "Agreement").) The Agreement, which consisted of two parts, provided information to Plaintiff such as the applicable interest rate, fee structures, and rewards. (*See* Agreement, Part 1 at 1-3.) The Agreement further stated that "[w]hen [Plaintiff] use[d] the Account . . ., [Plaintiff] agree[d] to the terms of the Agreement." (*Id.*, Part 2 at 1.) In addition, the Agreement contained an arbitration provision, which stated:

> Any claim shall be resolved, upon the election by [Plaintiff] or [American Express], by arbitration pursuant to this Arbitration provision and the code of procedures of the arbitration organization to which the claim is referred in effect at the time the claim is filed (*code*), except to the extent the code conflicts with this Agreement.

(*Id.*, Part 2 at 6.)

The term "claim" was defined as "any claim, dispute or controversy between [Plaintiff] and [American Express] arising from or relating to [Plaintiff's] Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that [Plaintiff] may have had with [American Express], . . . except for the validity, enforceability or scope of this Arbitration provision." (*Id.*) The term "claim" also "include[d] claims of every kind and nature, including but not limited to, initial claims, counterclaims, crossclaims and third-party claims and claims

4

based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity." (*Id.*)

American Express brought a motion to compel arbitration of the claims asserted against it in Plaintiff's complaint. (ECF No. 32, Motion to Compel; *see* ECF No. 33, Memorandum in Support ("Am. Ex. Mem."); ECF No. 36, Reply.) Plaintiff opposed the motion. (ECF No. 35, Response in Opposition ("Opp.").)

### Legal Standard

The Federal Arbitration Act ("FAA") provides that a "party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. When a party moves to compel arbitration, "the court applies a standard similar to that applicable for a motion for summary judgment," and thus can look beyond the pleadings. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

"When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

5

938, 944 (1995). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Id.*; *see Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) ("[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.") (citation omitted).

## Discussion

Plaintiff argues that 1) the arbitration clause contained in the Agreement is invalid because no reasonable person would have agreed to such broad terms (Opp. at 6-14), and 2) even if the arbitration clause is enforceable, his claims under the FCRA are not covered by the arbitration clause, and thus are not subject to mandatory arbitration (*id.* at 14-16). Plaintiff also asserts, in the alternative, that the arbitration

clause should not be enforced because it is unconscionable. (*Id.* at 18-25.)

### I. Validity of the Arbitration Clause

Plaintiff argues that the arbitration provision contained in the Agreement is invalid because "no reasonable person would have agreed to shackle themselves to arbitrate virtually the entire universe of possible claims with [American Express], including not only those arising under the current . . . Agreement, but all other agreements as well and the relationships arising therefrom, past, present and future." (Opp. at 6.)

The Agreement stated that it was governed by "Utah law and federal law," and the parties agree that principles of Utah contract law are applicable to the question of whether the arbitration clause is valid. (Agreement, Part 1 at 5; *see* Am. Ex. Mem. at 6; Opp. at 6.) Plaintiff is correct that Utah courts apply a "reasonable person" standard to contract interpretation. *See, e.g.*, *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1202 (10th Cir. 1992) ("in construing a" contract, "giv[e] the language its common and ordinary meaning as a *reasonable person* . . ., not the actual [party], would have understood the words to mean") (emphasis in original). The question of the arbitration clause's validity, however, is slightly different than the question of how to interpret

7

ambiguous language in a contract. The threshold question is whether the arbitration clause is valid at all, based on the parties' intent and an application of state law. *See First Options*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Under Utah law, a "credit agreement is binding and enforceable without any signature by the party to be charged if: (i) the debtor is provided with a written copy of the terms of the agreement; (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and (iii) after the debtor receives the agreement, the debtor . . . requests funds pursuant to the credit agreement or otherwise uses the credit offered." Utah Code Ann. § 25-5-4(2)(e). Furthermore, Utah law expressly permits credit agreements to contain an "arbitration or other alternative dispute resolution mechanism." *Id.* § 70C-4-102(2)(b).

American Express has proffered an affidavit demonstrating that all three requirements for a valid and enforceable credit agreement were present here. First, one of American Express's assistant custodians of records declared under penalty of perjury that American Express mailed a copy of the Agreement to Plaintiff when he opened his account in May

8

2012. (Hernandez Decl. ¶ 3.) Second, the Agreement stated that "[w]hen [Plaintiff] use[d] the Account . . ., [Plaintiff] agree[d] to the terms of the Agreement." (Agreement, Part 2 at 1.) Third, after receiving the Agreement, Plaintiff used the credit card. (Hernandez Decl. ¶ 4.) Plaintiff does not dispute any of these facts, and under Utah law, these elements result in a "binding and enforceable" credit agreement. Utah Code Ann. § 25-5-4(2)(e).

Plaintiff's argument is, in essence, that the specific arbitration clause contained in the Agreement is so broad that no reasonable person would have agreed to it. As an initial matter, Plaintiff overstates the scope of the arbitration clause. Plaintiff avers that it covers "virtually the entire universe of possible claims" against American Express. (Opp. at 6.) But by its terms, the arbitration clause covers only potential claims "arising from or relating to [Plaintiff's] Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that [Plaintiff] may have had with [American Express], or the relationships resulting from any of the above agreements, except for the validity, enforceability or scope of this Arbitration provision." (Agreement, Part 2 at 6.) Thus, it is not *every possible* claim between Plaintiff and American Express that is subject to arbitration; it is only those claims related to

9

either the specific credit account covered by the Agreement, the Agreement itself, the separate Electronic Funds Transfer Services Agreement, or a "related or prior agreement" between the parties.  An arbitration clause of this kind is permitted by Utah law, so long as the cardholder received it and thereafter began using the credit card.

Moreover, there is nothing inherently unreasonable about the arbitration clause.  Though it requires that claims related to the credit account or the Agreement must be arbitrated rather than litigated in federal court, it allows for procedures that will give Plaintiff a fair opportunity to have his claims heard by a neutral arbitrator.  Under the Agreement, his claims will be heard by an arbitrator from either JAMS or the American Arbitration Association (or another organization agreed upon by both parties), and the arbitration shall take place in the judicial district where Plaintiff resides. (Agreement, Part 2 at 6.)  The court does not agree with Plaintiff's contention that no reasonable person would have agreed to these terms.

Other courts have found the same arbitration requirement in cardmember agreements to be valid and enforceable under Utah law.  *See Aneke v. Am. Exp. Travel Related Servs., Inc.*, 841 F. Supp. 2d 368, 376 (D.D.C. 2012) ("[T]he Arbitration Provision is valid and enforceable under Utah law, which is the

10

relevant state law in this case."); *Khanna v. Am. Exp. Co.*, No. 11-cv-6245 (JSR), 2011 WL 6382603, at *3 (S.D.N.Y. Dec. 14, 2011) ("[T]he Cardmember Agreement meets the criteria outlined in Utah Code Ann. § 25-5-4(2)(e) and is 'binding and enforceable.'"). Plaintiff cites several cases in which courts have found much broader arbitration clauses to be invalid. (*See* Opp. at 7-10.) Plaintiff concedes, however, that the arbitration clauses in those cases "were more broadly worded than the one at issue here[.]" (*Id.* at 10.) For example, Plaintiff relies on a case in which Judge Frederic Block found the arbitration clause in a cell phone service contract to be "strikingly broad" where the contract covered "claims arising out of or relating to *any aspect* of the relationship between [the parties], whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory[.]" *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 501 (E.D.N.Y. 2016) (emphasis added); (*see* Opp. at 9). Nothing in the arbitration clause here purports to cover any claim that arises from "any aspect" of the relationship between Plaintiff and American Express. For example, if Plaintiff hypothetically opened a second account in the future that was governed by a separate agreement, nothing in the arbitration clause in the present Agreement could be read to cover claims arising from that new account. Nor would the

11

arbitration clause cover a hypothetical tort claim Plaintiff could bring that was unrelated to the credit account.[2]

The plain language of the arbitration clause is not so broad as to encompass every possible claim Plaintiff could bring against American Express, and it was properly included in the Agreement in accordance with an express provision of Utah law. Accordingly, the court finds that the arbitration clause contained in the Agreement is valid and enforceable.

## II. Scope of Arbitration Clause

Even though the court has found that the arbitration clause is enforceable, a second question remains: whether Plaintiff's specific claims against American Express are covered by the clause, and thus subject to arbitration. Plaintiff argues that his claims arise under the FCRA, rather than under the Agreement, and thus they are not subject to the requirement to arbitrate. (*See* Opp. at 14-16.)

The court notes that Plaintiff's argument on this point contradicts his prior argument that the arbitration clause

---

[2] The arbitration clause does state that it covers claims arising in "contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity." (Agreement, Part 2 at 6.) However, this language comes after the first limiting definition of a claim, which limits the scope to "any claim, dispute or controversy between [Plaintiff] and [American Express] arising from or relating to [Plaintiff's] Account, this Agreement, . . . and any other related or prior agreement that [Plaintiff] may have had with [American Express], . . . except for the validity, enforceability or scope of this Arbitration provision." (*Id.*) The most natural reading is therefore that a tort claim would only be covered if it met the first limiting definition—that is, if the tort claim arose from or related to Plaintiff's account, etc.

is overly broad, as he now asserts that, in fact, the arbitration clause only covers claims arising from American Express's failure to act under "an affirmative duty under the contract." (Opp. at 14.) Plaintiff cannot have it both ways, and the proper reading of the arbitration clause falls in the middle of these two extremes.

Contrary to Plaintiff's selective reading of the arbitration clause, the clause does not merely cover claims that arise directly from the language of the Agreement. It expressly covers claims "arising from or relating to [Plaintiff's] Account[.]" (Agreement, Part 2 at 6.) The gravamen of Plaintiff's allegation against American Express is that American Express failed to investigate a dispute that he raised regarding debt listed on his credit account, and that American Express continued to report the debt despite the dispute. (*See* Compl. ¶¶ 83-94.) That allegation clearly "aris[es] from or relat[es] to [Plaintiff's] Account[.]" (Agreement, Part 2 at 6); *see Khanna*, 2011 WL 6382603, at *3 ("Plainly, these allegations relate to plaintiffs' account and American Express's oversight of that account.").

Moreover, the arbitration clause's definition of a claim includes claims "based upon . . . statutes[.]" (Agreement, Part 2 at 6.) Thus, although American Express's duty to investigate the alleged dispute stems from the FCRA

13

rather than directly from the Agreement, the plain language of the arbitration clause covers any claim related to the account, even if the specific cause of action is created by a separate statute. A reasonable person could not interpret this language any other way. Even if there were an ambiguity, the Supreme Court has directed courts to construe the scope of arbitration provisions to reflect the federal policy favoring arbitration. *See Volt Info.*, 489 U.S. at 475-76; *Mitsubishi*, 473 U.S. at 626; *see also Aneke*, 841 F. Supp. 2d at 377 ("As the Supreme Court has held, claims based on federal statutes are no exception to the general rule that arbitration agreements should be enforced according to their terms.").

Accordingly, the court finds that the claims against American Express asserted in Plaintiff's complaint fall squarely within the arbitration clause, and are subject to mandatory arbitration.

### III. Unconscionability

In a final effort to avoid arbitration, Plaintiff shifts back to reading the arbitration clause broadly, and argues that enforcing it would be unconscionable under Utah law. (*See* Opp. at 16-25.) This argument lacks merit.

Under Utah law, "[i]n determining whether a contract is unconscionable, [courts] use a two-pronged analysis." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998). The

14

first prong is substantive unconscionability, which "focuses on the contents of an agreement, examining the relative fairness of the obligations assumed." *Id.* (quotation omitted). The second prong is procedural unconscionability, which "focuses on the formation of the agreement." *Id.*

Plaintiff argues that the arbitration clause is substantively unconscionable because "Plaintiff would be compelled to arbitrate claims having nothing to do with the Cardmember Agreement, but extending to every agreement ever fashioned between [American Express] and Plaintiff for the rest of his natural born life." (Opp. at 18.) As already explained, however, that is not so. The arbitration clause is limited to claims regarding the particular credit card account that Plaintiff opened, the Agreement, the related documents, and any other related or prior agreements between Plaintiff and American Express. Again, the arbitration clause would not cover claims related to a hypothetical second account Plaintiff opened in the future, or any matters arising from separate causes of action that were unrelated to Plaintiff's account.

Plaintiff relies on a case that found an arbitration clause to be overly broad where the clause explicitly covered "all disputes, controversies or claims between [the company] and [the consumer] (including breach of warranty, contract, tort or any other claim)" because a lawsuit "regarding a tort action

15

arising from a completely separate incident could not be forced into arbitration—such a clause would clearly be unconscionable." *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012); (*see* Opp. at 18).  In contrast, the arbitration clause at issue here, which has been upheld by other courts, does not purport to cover any and all possible *future* claims Plaintiff might one day have against American Express.

Next, Plaintiff contends that the Agreement is procedurally unconscionable because "it is a standard form contract offered on a take-it-or-leave it basis by a party, here [American Express], with [] a huge disparity in bargaining power as a sophisticated lender offering a line of credit to a basic consumer."  (Opp. at 19.)  Though Plaintiff may be correct that there is a disparity in bargaining power, that disparity does not rise to the level of unconscionability under Utah law, because Utah law expressly allows this type of contract.  *See MacArthur v. San Juan Cty.*, 416 F. Supp. 2d 1098, 1187 (D. Utah 2005) ("Under Utah law, 'adhesion contracts' are not prohibited *per se*.").  Under the Utah Statute of Frauds, a credit card company can use a standard form contract, and include an arbitration provision, and the credit card consumer can accept the terms by choosing to use the credit card.  *See* Utah Code Ann. §§ 25-5-4(2)(e), 70C-4-102(2)(b).  Here, American Express followed the law, and Plaintiff decided to bind himself to the

16

Agreement by voluntarily using his credit account.  This procedure is not unconscionable.

Accordingly, Plaintiff's unconscionability argument is, likewise, rejected.

## Conclusion

For the foregoing reasons, American Express's motion to compel arbitration is GRANTED.  Plaintiff may assert his claims against American Express in the proper forum, as described in the Agreement.  The claims against American Express in this action are stayed pending the outcome of the arbitration.  The court takes no position regarding the merits of Plaintiff's claims against American Express.

Counsel for Plaintiff and Experian shall jointly advise the court by letter filed to ECF regarding how they intend to proceed, by no later than March 15, 2021.

**SO ORDERED.**

Dated:    Brooklyn, New York
         March 8, 2021

                                    /s/
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

17